## Paine v. Kentucky Refining Company.

### Same v. Same.

(Decided May 28, 1914.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

1. Corporations—Services Rendered by Director in Auditing Accounts of—Implied Contract to Pay for Services.—Where director of a corporation is appointed member of a committee to audit and investigate a great mass of books and accounts of this corporation and eighteen subsidiaries, in an effort to settle a dispute between the corporation and its general manager, and the other members of the committee being salaried officers, leaving to the unsalaried director practically all the work, and that parts of every day and night during the three months were given by the director to this work, such services were beyond the scope of his duty as director, and under the circumstances gave rise to an implied contract on the part of the corporation to pay for them.

2. Arbitration and Award—Compensation of Arbitrator—Not Controlled by Section 1745 Kentucky Statutes.—The compensation of an arbitrator engaged in auditing the accounts of a corporation and effecting a settlement between it and its general manager is

not controlled by Section 1745 Kentucky Statutes, and one rendering such services is entitled to recover a reasonable compensation, and in an action to recover, the question of amount of compensation should be submitted to the jury.

DAVID R. CASTLEMAN and TRABUE, DOOLAN & COX for appellant.

ARTHUR M. RUTLEDGE for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Appellant sued appellee, the Refining Company, for $2,000. His petition was in two paragraphs. The claim in each paragraph is incident to a controversy between the corporation and its general manager, R. C. Waggener. The first is for $1,500 for services rendered appellee in auditing and investigating certain of its books and accounts relative to Waggener's contention, and the second paragraph is a claim of $500 for services as an arbitrator in the settlement of the Waggener dispute.

The appellee is a corporation of $300,000 capital stock, and, at the time the services were rendered, appellant was one of its directors. The lower court sustained demurrer to the second paragraph of the petition, holding that compensation as arbitrator is controlled by section 1745 of the Statutes, allowing arbitrators $1.50 per day, to be taxed as cost, and to be paid by the successful party; and since the Refining Company did not succeed in the arbitration, it was therefore not liable in any sum to the arbitrators. As to the first paragraph, after hearing the testimony of Paine's witnesses, the court gave the jury peremptory instruction to find against him, on the idea that the services he performed were of the character ordinarily expected of a director, and without compensation, there being no corporate by-law or resolution in this case providing otherwise. As to the general principles of law affecting the compensation of directors, counsel agree, and both cite the case of Huffaker v. Krieger's Assignee, 107 Ky., 200, where the rule is laid down as follows:

"Directors are not entitled to compensation for their services in discharge of their official duties unless compensation is provided for by the charter or by-laws, nor are they entitled to payment on a *quantum meruit* for the performance of services previously rendered by them within the line of their duty as directors. Note

to Ten Eyck v. Pontiac, &c., Railroad Co. (Mich.), 3 Law Rep. Ann., 378; s. c. (41 N. W., 905). But this rule does not apply where the services rendered are not within the scope of the director's duty, and the circumstances are such as to imply that both parties understood they were to be paid for   *   *   *"

On the first branch of the case, the question for decision on this appeal is well stated by appellee as follows:

"The question here is not whether a Director may recover for services outside the duties required of him as a Director. That he may recover for such services is conceded. The law is plainly to this effect. The question here is whether the services that Paine rendered were outside of his duties as a Director. If they were outside of his duties, he can recover for them; if they were not, he cannot. It is for the Court to decide as a matter of law, as it was the duty of the lower court to decide, whether under the facts presented the services that Paine performed were within or without his directoral duties."

To understand this question it will be well to give a brief history of the trouble, and call attention to the facts constituting the special service which Paine, while a director, claims he did perform for the corporation.

Paine avers, and proves, that he is a man of many years' experience in the business world, and accustomed to keeping books, and auditing accounts, and has served as secretary and bookkeeper of several large business concerns. From 1904 to 1906 he was traffic manager and secretary of the appellee Refining Company, and in this way became familiar with the details of its business, and its methods of accounting. During 1906, and until the Fall of 1907, he had no connection with the company, but at that time he became a stockholder, owning $15,000, a relatively small account, and was elected director. The business of the company amounted to about $5,000,000 a year, and was the manufacture of cotton seed oil and meal, with headquarters in Louisville. It owned and controlled nineteen subsidiary corporations, located at various places throughout the South. In July, 1905, the company employed Mr. Waggener as general manager for a term of five years, and under written contract he was to be paid a salary of $6,000 per year, and was also to receive an additional compenstion of 10 per cent

of the net earnings of the company. In the fall of 1907, when Paine resumed his connection with the company, an internal war was about to break out of the corporate confines. Serious differences had arisen between Waggener and other corporate officials as to the proper construction of his employment contract, and the right method to compute the net earnings so that his added commissions could be determined. There is some evidence to indicate that it was because of Paine's former connection with the company, and his ability as an accountant that he was induced to buy the stock and become a director, so that the parties in dispute might get the benefit of his services in the way of an amicable settlement, and at the same time the credit of the company might be spared the injury which would necessarily ensue if this dispute should go into court for settlement, and the attention of the public be directed to the bickerings of its officers. In July, 1907, about the time Paine became a director, a contract which was known as the Columbus agreement was entered into. This has reference to the dispute between Waggener and the company, and it was then agreed, in effect, that if it could not be otherwise adjusted, it should be submitted to arbitration, and Paine was then named as one of the arbitrators.

One of the first difficulties in adjusting matters with Waggener was to decide whether the profits of the company should be figured on the five year basis, or annually. Waggener's contract provided that the commission on profits or earnings should be paid to him annually, and it also stipulated that his percentage should be on the earnings, or profits of the corporation and the various companies operated and controlled by it, and that, in estimating the profits of the company and its various subsidiaries, the ordinary office and operating expenses should be deducted, as well as the cost of repairs usually charged to that account, and there should also be deducted any loss sustained by the company, or any of its subsidiaries, but there should not be deducted the cost of machinery or equipment for permanent betterments, or new improvements. In the two years of Waggener's service as general manager, the company earned by way of profits more than $400,000, but the first year there were no profits. The United States Audit Company had gone over the books of the

Refining Company for the two years, and made a general audit and report as to results, but there was no separation of the business done, or the profits or losses as for each year, and the audit had no reference to Waggener's dispute, if in fact it had then arisen. At the close of the second year the company charged off $156,000 for loss on oil consignments. Waggener was insisting that this loss occurred during the first year, or was before then, when he had no connection with the company, and that it should not be deducted from the earnings while he was in charge, and particularly from the earnings of the second year of his business. In view of this state of facts the Board of Directors submitted the matter to a Philadelphia lawyer, whom the records of the company style "special counsel." This lawyer wrote to the company under date of December 10, 1907, and from it we make the following quotation:

"Unless a further and most exhaustive examination is made by the Audit Company, which would require a month's time to complete, it is impossible to determine to a nicety the exact sum which Waggener is entitled, under any construction of this contract, to receive from the Kentucky Refining Company, because it is impossible at this time to say just to what extent the $156,000 which has been charged off during the last fiscal year for losses on consigned oil is properly chargeable for a period anterior to the date of the contract in question. * * * The report of the United States Audit Company seems to justify the belief that there was a profit made by the Kentucky Refining Company and its subsidiary companies for the fiscal year ending August 31, 1907, the amount of which in excess of $11,263.09 is impossible now to determine unless the examination above suggested is made, the cost of which would perhaps be $1,500 to $2,000."

On December 17 following, at a meeting of the company's Board of Directors, this letter was up for consideration, and the following steps were taken:

"A communication addressed to the Board of Directors by Special Counsel, John Dickey, Jr., dated December 10th, 1907, relating to the settlement between the company and R. C. Waggener, under latter's contract dated July 1st, 1905, was presented by W. C. Waggener and was read by the secretary. On motion of

Arthur M. Rutledge, seconded by E. E. Paine, John Dickey's report was received and ordered filed.

"On motion of E. E. Paine, duly seconded, it was unanimously resolved that a committee consisting of C. M. Hallman, Frank J. Fulton, and E. E. Paine be appointed for the purpose of ascertaining what amount, if any, is due by this company to R. C. Waggener under contract of July 1, 1905, with authority to settle with R. C. Waggener if a unanimous conclusion is reached."

Messrs. Hallman and Fulton, named above as members of this committee, were salaried officers of the company, and, as Paine contends, had very little time to give to this work from their regular duties, and in fact devoted but very little time to it, while Paine, who was not a salaried officer, but engaged in his own private business for a livelihood, had to take time from his own business and do nearly all the work. The testimony of Paine and Waggener shows in detail the nature of the service which he performed, and the time consumed in it, and we quote the following from Paine's testimony concerning it:

"The Kentucky Refining Company had a statement from an audit company known as the United States Audit Company, showing that there had been no profit for the two years ending with July or August of 1907, and further stating that it was impossible to ascertain definitely, without a lot of additional work, what the profits for the twelve months or the one year ending July, 1907, were. In their examination they had not undertaken to do it, and had taken the two years together. Waggener's contract was an annual contract as claimed by him. In other words, at the end of each fiscal year he was to receive a statement from the company, drawing salary from month to month, and receive at the end of each fiscal year ten per cent of the net profits. If there were any losses during that fiscal year Mr. Waggener alleged that they were to be taken out and the next year he was entitled to ten per cent. The company alleged that the contract covered a period of five years and had to be construed as a whole. There were three years remaining undetermined, as the contract ran up to 1910. It became necessary for the committee to do what the audit company had not done. In other words, to ascertain the net profits for the fiscal year ending with July of 1907—that twelve months sep-

arated from any other year and separated from any preceding period. There were nineteen corporations about. Each of them had a separate set of accounts, and it became necessary to delve into each of those accounts. He attempted and undertook to state the fact which warranted him in making this claim. Mr. Waggener made a statement of his claim, of the amount he claimed, of the basis on which he alleged his claim was predicated, and how much money he claimed was coming to him. That is his interpretation of the contract. The company on the other hand stood by the audit company's report and urged that the two years should be considered together and not each year separately. When the committee decided to go into the bill of particulars for each separate year they had to take up all the separate accounts of all kinds. The accounts were very much involved, and confused, because there were so many of them. These crude oil mills shipped oil to the home company in Louisville as fast as made. Sometimes it was not sold by the home company at that time but carried along for a long period. That oil was subsequently sold by the Kentucky Refining Company, and it was necessary to ascertain and find the market prices of the oil so as to ascertain whether the oil had gone up or down. Each fiscal year had to be taken by itself. One question was the valuation of the oil on hand at the beginning of each fiscal year, beginning say with the summer of 1906, and ending with the summer of 1907. Mr. Waggener alleged that that oil at that time was valued too high and consequently the second year he was charged for the oil at more than it was worth. It became necessary to go back and find out what the prices of oil were, and there was a multiplicity of complications in reaching these figures.''

He began this work of auditing and comparing the accounts on December 17th, and continued until March 24th, when the committee reported they were unable to agree. On this day, and because of the failure of the committee to agree, the directors, in accordance with the Columbus agreement, and by resolution, referred the dispute to Paine and Van Camp, as arbitrators, for settlement. Van Camp, too, was a large stockholder and salaried officer of the corporation. Since the form of the resolution for arbitration has a special bearing on the questions involved in the claim for services as

arbitrator, set up in the second paragraph, we here copy same:

"This agreement made and entered into by and between the Kentucky Refining Company, a corporation organized under the laws of the State of Kentucky, with its principal office and place of business in Louisville, Kentucky, and R. C. Waggener, of the same City and State, WITNESSETH:

"THAT WHEREAS, a controversy or dispute has arisen between the parties hereto respecting the amount, if any, due said Waggener by said Kentucky Refining Company as commissions upon the net earnings of said company for the period beginning the 1st day of July, 1906, and ending the 30th day of June, 1907, under a certain contract between the parties hereto, dated July 1st, 1905, wherein said Waggener as additional compensation for his services, is allowed ten per cent of said net earnings.

"AND WHEREAS, a further controversy has arisen in regard to the credits allowed to said Waggener by said Refining Company, on November 29th, 1905, under a certain contract between said Refining Company and said Waggener, the said Refining Company claiming that there was an over-payment of the amount properly due;

"Now THEREFORE, for the purpose of settling said controversies or disputes, *we, the undersigned parties hereto, have mutually chosen and agreed* to Cortland Van Camp and E. E. Paine, Arbitrators, who in case of disagreement shall select a disinterested person to act as umpire, and an award by said above named arbitrators, or in case of their disagreement, an award by either of said arbitrators and said umpire, shall be final and binding upon us, and we do hereby bind ourselves that we will perform the same, provided said award is in writing.

"IN WITNESS WHEREOF, said Kentucky Refining Company has caused its name to be hereunto signed by its Vice President and counter-signed by its Secretary, and its corporate seal to be hereunto affixed and said Waggener has hereunto set his hand in duplicate this the 24th day of March, 1908. Kentucky Refining Company. F. W. McKee, Vice-Pres.; C. M. Hallman, Secy.; R. C. Waggener."

On April 4th the arbitrators reported an award in favor of Waggener for $41,000, credited by $25,000 theretofore paid to him. This award was accepted by the parties, and settlement made between them accordingly. In June following, Paine rendered a bill to the company for $2,000 for his services, and the company failing to pay it, the suit followed.

After a careful reading of the record, we are of opinion that the services which Paine performed were extradirectorial, and done in his individual capacity, and that all parties concerned so understood. The company in good conscience cannot expect a director to do such work merely because he is a director, and without compensation. The management of a corporation is left to the directors. They are, in a sense, trustees for the stockholders. They are a sort of advisory committee, acting collectively, but not individually. It is their duty, as a board, to advise and counsel the officers in the discharge of their duties, and to keep a general supervision of the affairs of the company. Savings Bank v. Caperton, 87 Ky., 307; U. S. Fidelity Co. v. Foster Deposit Bank, 153 Ky., 698.

The Caperton case was an effort to hold Caperton liable as a director for a defaulting cashier on the idea that Caperton had been derelict in his duty to make detailed examination of the books, but we held that such extra labor was not incumbent upon him as a director, and it was further said:

"But we know of no rule of law or reason that would require such an investigation by directors, and to hold them responsible for failing to discharge such a duty would be imposing a responsibility that no business man would assume without a compensation commensurate with the labor required."

To the same effect is the holding in the Foster Deposit Bank case, that the fact that one was a director "did not impose on them the duty of making such a thorough, intelligent and careful examination of the accounts of the bank kept by the cashier as a bank inspector would have made or as would probably have been made by a committee of skilled, trained bookkeepers."

In the Krieger case, supra, in discussing the duties of directors and their right to compensation for certain services, we said:

"It is not incumbent on them, as directors, to expend their personal means for the corporation, or to travel to distant cities, and remain there for months, in efforts to sell the plant of the company. When they entered upon negotiations for the sale of the plant, the corporation having authorized a previous committee to make a sale, and agreed to compensate them for their services, it was not unreasonable in appellees to expect pay for their services in the same matter, which they took up just where the other committee left it off."

Other cases illustrating the right of a director to re-cover for extra-directorial duties on a *quantum meruit* are Louisville Building Assn. v. Hegan, 20 K. L. R., 1629, and Grundy v. Pine Hill Coal Co., 10 K. L. R., 833.

It seems to us that a mere statement of the services performed, and the circumstances under which he engaged in them, make it clear that they were beyond his duties as a director, and that if it was not distinctly and mutually understood, there was an implied contract that he was to be paid for them. Paine and Waggener both swear that it was the understanding of all parties that he should be paid, and while it might be said that Waggener is a disgruntled officer, and his testimony should be discredited, at the same time it is undenied. But granting that there was no express agreement for compensation, yet the undertaking was at the special instance and request of the corporation, formally expressed. The fact that Paine did practically all the work, and was engaged in it for three months, for parts of every day and night at least, and the volume of accounts he had to inspect, and the calculations he had to make are all circumstances which raise the presumption that both parties understood, or ought to have understood, that compensation was to be paid him. These are certainly sufficient facts and circumstances from which a promise or contract to pay may be implied. If the other members of the committee performed little service, and Paine had most all of it to do, it is a further circumstance tending to show that they expected Paine to be paid for it.

Appellee argues that because Paine was a director, it was his duty to reconcile the differences between corporate officials, and to make peace in a house about to be divided against itself. Of course, he should do these things—as a pleasureable duty, and not for compensa-

tion. To pour oil on troubled waters is always commendable and clearly within the scope of his directorial duties, but it is going too far to require him to furnish the oil.

Appellee's counsel further insists that the services rendered by Paine were mere trivial detail, and of small consequence, but that they become magnified by their very statement and narration. We have observed appellee's word of caution in this regard, and endeavored to get his focus from the other end of the glass, but view it as we may, we are unable to see that Paine, simply because he was a director, could be, or was expected to render the services without compensation. Whether the services redounded to the company's loss, or were unimportant, or mere trivial detail, it was such detail as was necessary for him to acquire in order to do the work assigned to the committee by the corporation, and, to all intents and purposes, assigned by the committee to him. As to whether the labor required was as large as Paine claims, or as trivial as appellee argues, that question is for the jury, and we are convinced that the court erred in not so submitting it.

For these reasons, on this branch of the case, we think the lower court correctly overruled demurrer to the first paragraph of the petition, but that it was error to take the case from the jury, for it seems to us that appellant's proof made out a case for him.

We now come to the question as to whether Paine is entitled to recover from the corporation compensation for his services as arbitrator under the common law, or whether he is limited by the statute above referred to, and in order to secure the statutory fees of $1.50 per day, it was incumbent upon him to agree to an award favorable to the corporation. Paine was first named as an arbitrator in the "Columbus agreement," which was formulated even before the investigating committee was selected. That agreement shows that Paine was selected by Waggener as his representative, but when the committee failed to agree, and the dispute was finally submitted to arbitrators, it appears from the resolution above quoted that Paine and Van Camp were "mutually chosen and agreed to." But whether Paine as arbitrator was designated by, and acted as the representative of Waggener, or whether he, with Van Camp, is to be considered, in the light of the resolution, as a member

of the board mutually selected and agreed to by the parties, we think, in either event, under the common law, there is a joint and several liability for their services as against the parties to the dispute. We notice that the arbitration agreement does not provide for fees, or for the payment of any expenses incident to their labors, but notwithstanding this, and aside from the statute, we are of opinion that the arbitrators are entitled to a reasonable compensation to be paid by either, or both of the parties. 3 Cyc, 726, gives a very clear statement of the law on this proposition:

"Irrespective of the power of arbitrators to award the cost of the arbitration, when such costs have not been provided for, including compensation to the arbitrators for their services, the parties are liable, under an implied contract, to pay the arbitrators a reasonable compensation."

Note 55 on the same page makes this further statement, and sustains it by reference to numerous authorities:

"In as much as the arbitrators are to be regarded as acting for all of the parties, the liability is joint and several, and an action of implied assumpsit may be maintained either jointly or severally against one or all of the parties."

This point seems to have never arisen in Kentucky for adjudication, but wherever the courts in America have been called to pass upon it, their rulings are so in harmony, and consistent with what appears to us to be the right of the matter that we have no hesitation in accepting them. The Supreme Court of Massachusetts in Russell v. Page, 147 Mass., 282, 17 N. E., 536, thus lays down the law:

"The rule has been repeatedly stated that both parties are liable to the arbitrators for their reasonable charges. Where one has paid the whole amount it has also been held that he might recover a moiety thereof from the other; the payment not being deemed on his part to be an officious and voluntary one, but the payment of a sum for which both were liable, and entitling the party paying to contribution from the other."

In Holcomb, &c., v. Tiffany, 38 Conn., 271, defendant and one Simon had a dispute, and Holcomb was selected as one of the arbitrators for its settlement. In making their award the arbitrators fixed their fees as a part of

the cost, charging them against the defendant, notwithstanding the fact that the agreement for arbitration made no provision for costs. In passing on the case the court held it was immaterial that the award attempted to regulate costs, and said:

"The plaintiffs performed certain services, as arbitrators, at the request of both parties, defendant and Simon. They are entitled to compensation and have at least a claim against both parties jointly. That another is jointly liable with the defendant is no defense under the general issue, but can be taken advantage of only by plea in abatement." See also Young v. Starkey, 1 Cal., 426; Alexander v. Collins, 28 N. E. (Ind.), 190-191.

These statements of common law principles result from a policy of the courts which has always been to favor amicable settlements of controversies. To this end, we have in Kentucky two statutory enactments, both of which aid and supplement, rather than supplant, the common law. One is under the provisions of section 451 of the Civil Code and the other is chapter 6 of the Kentucky Statutes. The Code provisions have reference to controversies then pending in court, or agreements concerning controversies which are filed and entered on the court records. In such cases, and on request of the parties the matter is submitted to arbitration by order of the court. The Code then in detail regulates the proceedings before this arbitration court, gives power to coerce attendance of witnesses, and places at their disposal the sheriff, and other court officials. The award of such arbitrators has the force and effect of a judgment, and is entered of record as such. Chapter 6 of the statute merely gives form and recognition to common law agreements for, and awards of, arbitrators. As above stated, it supplements, but in no sense supplants common law arbitration, and in this way it also supplements the Code provisions above referred to. The form of agreement for arbitration is set forth in the chapter, and directions are given as to how the arbitrators shall proceed; they hear the testimony offered by either party as in other forms of arbitration, and have the power to summons and compel the attendance of witnesses, and to even punish for contempt, but court officials are not subject to their order, neither is their award given the force or effect of a judgment. It is merely binding upon the parties thereto, and like any other formal contract,

becomes, not a judgment, as under the Code, but a cause of action or basis of a court judgment, and which the courts will make effective. The arbitration agreement made by the parties in this case substantially conforms to Chapter 6. There was no attempt to, and it is not contended that it approximates the dignity of an arbitration under the Code provisions. The arbitrators made no effort to tax costs, neither could they. The agreement does not require that the arbitrators be sworn, nor does their award bear evidence that they were. In considering alone the statute and code provisions for arbitration, *supra,* it will be noted that there is no evidence of a legislative intent to deny or limit the right of arbitrators to be compensated for their services, but in this discussion we have not referred to section 1745, of the Kentucky Statutes, which is as follows:

"Arbitrators shall be allowed one dollar and fifty cents per day, to be paid by the successful party, and taxed as costs."

We cannot concur in the conclusions of appellee's counsel that this section applies to common law arbitrations, or to arbitrations under chapter 6 of the Statute. Arbitrators in such cases have no power to tax costs, and clearly it was not the purpose of section 1745 to permit them to do so, and be subject to the indirect influence of finding for the party who is best able to pay the fee allowed for their service. It clearly applies to arbitrators who serve by authority of the court under the code provision, and where no express contract is made by the parties in such arbitration for payment of costs. Even then the arbitrators do not tax the costs. The arbitration fees referred to in this section are those only who serve under Code section 451. The costs of such are taxed as any other court costs, and by the same officers. The question whether the court may, under special circumstances, make extra allowance is not presented in this case. Appellant's counsel calls attention to the fact that it will be just as unreasonable to limit arbitrators acting under common law, or section 6 of the Statute, to the $1.50 fee, provided by section 1745, as it would be to deny the right of land surveyors, when acting under private agreement between adjacent land owners for surveying their disputed lines, to receive more than $1.00 for surveying and platting each 100 acre tract, as provided in section 1744 of the Statute. It is true that the

surveyor's fees are fixed by statute, but they have reference only to the county surveyor acting in his official capacity, or when ordered to make a survey by the court. In such cases his fees are taxed as costs, and as fixed by statute.

We are of opinion that appellant Paine is entitled to recover a reasonable compensation for his services in auditing and investigating the books and accounts of appellee with a view to bringing about a settlement of the dispute between appellee and Waggener, and also for his services in arbitrating it. The amount of compensation is a question for the jury based upon the character and value of the service rendered. If the fact that his services in auditing the accounts made his labors easier and required less of his time in arbitration, the jury will, of course, give that consideration in fixing the amount to which he is entitled on each claim.

The letter written to the company by Mr. Dickey, the Philadelphia lawyer, was offered in evidence by appellant, but the court sustained appellee's objection to its introduction. This letter was referred to in the resolution appointing the committee to audit and investigate the accounts. It is explanatory, and the basis of the resolution. The contents of this letter tend to support Paine's contention as to the amount and character of service he was called upon to render. It also contains an opinion as to the cost or value of the service. We are of opinion that all of the letter is competent evidence, except that part placing an estimate on the cost of the service. If appellant desires the opinion of Mr. Dickey on the value of his service, he should take his deposition. In other respects it is as much competent as the resolution itself, being a part of it.

On the whole case, we are of opinion that the court erred in failing to submit to the jury appellant's claim as set up in each paragraph, and for these reasons the judgment in each case is reversed and remanded for proceedings consistent herewith.